Your argument is United States v. Trevino. It is docket 24-2170. Counsel, you're ready for your argument when you're ready to give it. Yes, thank you, Your Honor, Counsel, and may it please the Court. My name is Shira Kival. I'm an Assistant Federal Public Defender. I represent Delbert Tyler Trevino. Mr. Trevino should receive a new trial because the District Court interfered with his ability to present a defense in violation of the Constitution and in erroneous reliance on Federal Rule of Criminal Procedure 12.3. During closing argument, Mr. Trevino tried to invoke evidence of his redemption of his own firearms from the El Paso, Texas, Police Department to undermine the government's proof of mens rea. It's proof that he knew that his rifle's barrel was under 16 inches, and it's proof that he knew that he was not allowed or that it was illegal for him to acquire ammunition at the time. Mr. Trevino should have been allowed to continue with that argument. Instead, the District Court sustained the government's public authority objection, ordered him to move on, and instructed the jury that his defense was contrary to law, and this Court should reverse. The crux of the District Court's error here was its erroneous determination that Mr. Trevino's proper mens rea defense was actually an unnoticed public authority defense governed by Rule 12.3. It wasn't. Mr. Trevino never claimed to be acting pursuant to public authority. He didn't claim to be acting or believe he was acting on behalf of law enforcement officers, which is the triggering language in Rule 12.3. He wasn't on some sort of undercover mission. And the government does not defend the basis of the District Court's ruling. Can I pause you right there and just ask you? The exact language that prompted the objection and the sidebar and the Court's ruling is in response to defense counsel making the argument, the police gave it back to him, and if we can't trust that, what can we trust in the United States? It's all reliance. I relied on the police, and that's why I have this. I assume that the firearm is legal and the barrel's more than 16 inches because I relied on them. That sounds an awful lot like an excuse-based defense that should be noticed. Tell me why not. Okay, I think there's a few reasons. I think right here, if you look at the context, Mr. Trevino's lawyer was discussing the ammunition charge, and I know that he mentioned firearms, but it's really important if you read the last couple paragraphs there that he's responding directly to the government's argument about willfulness and the ammunition charges and that his ability to acquire and possess ammunition and firearms go hand in hand. Under the government's theory, the only reason that Mr. Trevino would have known that it was illegal for him to possess firearms, and I'm not sure that this is really a valid theory, but we're not challenging it on appeal, but the only reason that he would have known that he wasn't allowed to acquire ammunition is because the New Mexico Probation Department informed him that that was a condition of his probation. It wasn't a condition of his probation in Texas. So New Mexico tells him, you're a felon. You cannot have firearms or ammunition. Mr. Trevino's testimony is that he's confused about that because he knows he's not a felon, and that also he knows that Texas is in charge of his case. It has jurisdiction and it can change his conditions, and his own testimony was the word trust, that he trusted that whatever needed to be done in Texas had been done because he got these back. So this is certainly about his ammunition charge. It's certainly in this exact moment where the objection happens. It's certainly about his testimony and that word trust, but I also want to say this. Even if it turned out that his argument was, I did not act willfully, I believed that I was allowed to have ammunition because they told me so, if that had been his theory of defense, in this case it still would have been a mens rea defense. I know that it would have looked an awful lot like an equitable estoppel defense, but equitable estoppel has nothing to do with this case. Equitable estoppel is a technically and highly circumscribed exception to the general rule that ignorance of the law is no excuse, and it plays no role where you have a willfulness element and ignorance of the law is an excuse because it doesn't matter why Mr. Trevino didn't know that what he was doing was unlawful if he really didn't know. It doesn't matter if he just didn't know. It doesn't matter if it's because the police told him so. It simply doesn't matter. I will also say that if it were an equitable estoppel defense, it still wouldn't be covered by Rule 12.3 and it still wouldn't have a notice requirement. It's very clear that Rule 12.3 only covers the defense of actual or believed exercise of public authority. Those are really key words for the sort of prototypical public authority defense. And this circuit, it's the only public authority defense. This is not an umbrella term. And equitable estoppel is a completely different theory that does not have a notice requirement in the District of New Mexico. I'm not sure that I agree with you on the ammunition firearm, just looking at the language. Right before that, it's talking about he was informed he could get the firearms back in Texas, and now they're trying to say, oh, he knew he couldn't get them back, sounding as though it's the firearms. And that leads directly into if you can't trust. So I'll take another look at that. And maybe you're right. And, Your Honor, I also think that it matters that... Separate question on El Paso.  ...and have expertise in and are attentive to and care about measuring the length of a barrel on a firearm like this one. How could, even if he wants to rely on it, say I trusted them to my detriment, how can you trust that when that's not even their job and it's just some evidence custodian who probably worked in the night shift said here's your guns back? And, Your Honor, it's a police officer he'd been in constant contact with, both himself and through his girlfriend, trying to get his guns back throughout the pendency of his Texas case. Again, this... I'm going to go back to your previous question for just a moment, because when the district court sustained the government's objection, it said this is what you've been doing the last three minutes. And what it's important is to go back to page... In the green, it's page 847. On the bottom right, 812, where he starts with dates matter, because that's a direct response to the government's argument about ammunition, that dates matter. New Mexico said you can't have guns or firearms in June 17th. And Mr. Trevino then testified, but yeah, I then had this interaction in Texas afterward. So I don't see this particular spot as an argument about the short-barreled rifle. But he does, of course, make arguments about the short-barreled rifle, and we're requesting that this go back for retrial on all grounds. And his argument is subtler because it's not an affirmative defense that he's making. He's trying to undermine the government's proof of mens rea. The government must prove beyond a reasonable doubt that he actually knew the length of the rifle barrel. And there's lots of important evidence here, because there's testimony about upper receivers versus barrels, that the upper receiver is much easier to switch out. It's clear from the photographic evidence that the upper receiver in this case is over 16 inches. And Mr. Trevino says he only ever switched, he only ever assembled it with an upper receiver. And he also testified that he hadn't switched out the upper receiver or barrel or anything having to do with the barrel since he had received it back from the El Paso police. He also testified repeatedly about cleaning the firearm. About what, I'm sorry? Cleaning it. Yes. He assembled it, he bought the pieces. This isn't just somebody who got a firearm on a corner. He built it, he put it together, he shot it, he cleaned it. And one of the exhibits, the last one I think, or second to the last one, is a photograph of a rod being put into the barrel. And a ruler on that showing 12.6 or whatever it was, inches, substantially less than 16. In cleaning the firearm, wouldn't he have been doing that same exercise with something to where he would have seen the length? In other words, this I didn't know defense. How good is it? And, Your Honor, I think that goes to harmlessness. And I really want to point out that in this case, the government has not argued harmlessness. It's their burden. It's a preserved objection. We believe that this is structural error. But even if it's a question having to do with harmlessness, the government hasn't argued it. And I don't believe that this court should exercise its sua sponte right to address it because it only does that when the record clearly indicates that the person would have been convicted. And I don't think we have that here. We have two different, we have evidence. I mean, the government certainly had sufficient evidence to sustain its case. But Mr. Trevino is sort of, you know, he's like, yeah, I put it together, but it was these easy-to-put-together component parts. It wasn't the hard-to-put-together barrel. We don't know if he knew kind of, okay, when I'm cleaning it, where that rod hits is the barrel. Is what he's cleaning with it have those measurements on it? There's no evidence about that. We do know that different officers made mistakes when they were looking at it. And, yeah, they weren't the ATF officers, but Mr. Trevino is not an ATF officer either. And so he relied on all of this evidence collectively to undermine the evidence of his knowledge of this element, that this was, it had all the component kind of add-ons that you would have for a long-range rifle. When you shorten a rifle, the testimony was, it's because you're not wanting to use it at long range. And so there is evidence on both sides, and it's not clear that the jury would have convicted if it hadn't been told to disregard this argument. I don't know if there's any specific questions about any of the remaining arguments in this case. Really quickly, you know, the government, I think it's very clear that the district court cut off Mr. Trevino's closing and said, you're going to move on from it right now. Mr. Trevino had never abandoned his argument. This had been a debate throughout, and he only sort of conciliatorily fought back with already a ruling that he was doing what he wasn't supposed to do by saying, I really don't think I am. But if you think I'm towing the line, right, if I'm out of bounds here, then I'll move on. So this is not a waiver. This is absolutely an interruption. He does not, after that, he's instructed to move on. He does move on. He never, you know, he ends his closing shortly thereafter. He does not bring up El Paso ever again. He does not apply the facts to the law for the jury ever again. This really cuts off his closing. And then additionally, the district court instructed the jury that this is not an accurate statement of law. And that's wrong. The argument that Mr. Trevino had made up to that point, all of it was proper argument. It all went to mens rea, and because it went to mens rea, it was not excludable as being a public authority or equitable estoppel claim. Would we even be having this discussion if you would have just preserved the defense? Your Honor, he simply didn't raise a public authority defense. He didn't. Public authority of the law is extremely clear in this circuit and in other circuits that public authority is about acting pursuant to it. Not I was advised about the state of the law. I thought it was illegal. The conduct misled me into understanding what my rights were. It's something really different. It's I went in and did this controlled by. I went in and I was working hand in hand with the police. I was exercising the same authority that the police do because the public authority defense originally, the common law one was possessed by the police that they may break the law in exercise of their public authority in certain situations. And so that's what the public authority defense is. He had no reason to give notice because he didn't do anything even approaching that. And if I may, if there's no further questions, I'd like to reserve the remainder of my time. Yes. Thank you. Thank you. Counsel. Good morning, Your Honor's counsel may please the court. I'm James Braun on behalf of the government. The issue here is not whether the district court correctly labeled defense counsel's closing argument as a public authority defense, rather than a generic governmental authority defense or an entrapment by estoppel defense. But the real issue, it was a lack of mens rea approach. Right. I was frustrated by the briefs that you, you seemingly didn't engage the men's rea issue very strongly. You kept wanting to give it other labels. And I think, I think it's clear. It's not all these other things that you're saying it's not, but it is whether there was men's rea. And that's the thing that really needs to be addressed. And for some reason, you seem to say there was a whole bunch of other things here. It was not. Well, I agree. Well, and before you're done with your argument, I'd like you to give adequate attention to the men's rea point. And is it not a credible piece of evidence that I my men's rea was that they wouldn't have given it back to me if they didn't think it was legal for me to have. I don't know why they thought that. I don't know whether it was something in Texas that I didn't know about. I don't know if there was something else, but I reasonably believed that they decided it was OK for me to hold on to. And I'm relying on that. Now, we may disagree with it. I think the jury very likely would disagree with that factual premise. But still, it comes up under men's rea and not all these other theories that the brief spend so much time on. Well, Your Honor, we acknowledge that the defendant did argue men's rea as to two points. One was the length of the barrel and his knowledge of it. The other. The second was whether he willfully purchased the ammunition, meaning that he knew it was unlawful and he was allowed to make both of those arguments. Now, with regard to the El Paso police giving him the guns back, he was allowed to testify. Initially, the court, the district court was going to preclude that evidence because it found that it wasn't relevant. But it allowed the defendant to testify to it as to his men's rea. And what he testified was that he believed he could purchase the ammunition because he thought his conditions of probation must have changed when they gave him the guns back. But he never testified as to any impact the return of the firearms had on his knowledge of the length of the barrel. And on appeal, the defendant argues that that was one of his arguments, that because the receipt said long rifle, that that caused him to believe that it was not a short barreled rifle. But he never testified to that. That was not an argument that would have been supported by the evidence. And so what he did argue, and without objection, was that the government was confused about the length of the barrel. And I think Judge Phillips made the point about the evidence that was introduced about the ruler in the barrel. And one officer thought it was 13 inches. The expert testified it was 10 inches. The defense argued all of that and that if the government's confused about the length of the barrel, we can't expect him to know. That's his men's rea argument. He made that. He also argued that if he believed his probation conditions had changed and so he didn't willfully purchase the ammunition, he was allowed to argue that. It was when he did something more. And his argument kind of goes, jumps all over the place. It goes from that he trusted the El Paso police to he didn't know the length of the barrel to arguing that his purchase of the ammunition wasn't willful. But by the time the government objected, he was saying that he trusted the El Paso police and if you can't trust the police, who can you trust? And that's when the government objected that he was making an unnoticed public authority defense. And when defense counsel said, no, I'm not, the prosecutor responded, it's still a public authority defense by some other name. And that was exactly right. It was an entrapment by estoppel government authority defense. And the court rightly said, that is exactly what you're doing. The court then instructed the jury on the law and told them to have that in mind as you consider what's been set up to that. I mean, what wouldn't that evidence support a fact of lack of mens rea? I mean, it might have been more than that. I don't know. But I didn't see much emphasis in some of these other theories from the defendant. But it certainly, in any event, would have carried a credible mens rea argument, don't you think? If the defendant had testified, when I received the AR-15 back, I noticed that the receipt said long rifle. I thought that meant long barrel rifle, even though that's not what the receipt said. And so therefore, I didn't know the length of the barrel, but he never testified to that. And so possibly that could have been a proper mens rea argument, but that's not what the defendant testified to. And the case law is clear that a district court has discretion to limit a defendant's argument in closing to that which is supported by the evidence. There was simply no evidence of any effect that the return of that AR-15 had on the defendant's state of mind as to the length of the barrel of the rifle. He did testify, I didn't know the length of the barrel, but he didn't say that was based on anything the El Paso Police Department did. The only thing the El Paso Police Department did, according to his testimony, that caused him to have a belief was that his probation conditions had changed. And that's a separate argument. That goes to the willfulness of the ammunition, not to his mens rea, his knowledge of the length of the barrel of the rifle. So when he argues, early in his argument, he argues the El Paso Police Department gave Tyler back the weapons. The police department didn't think anything was wrong with the rifle. And then later, a few minutes later, he says, if we can't trust that, what can we trust in the United States? That is something different than arguing they led me to believe the length of the barrel was short. That's arguing that I should be able to trust, we should be able to trust the police that when they get back the rifle, that it's lawful. And that's how the court reasonably interpreted that argument. And what the court did was then instruct the jury just that that was not a correct statement of the law based on this case. The court did not instruct the jury to disregard any proper argument that had been made up until that point. It simply instructed the jury to consider everything it had heard in light of that instruction on the law. And it's important to look at exactly what the court said, because the court said the suggestion that because the police in El Paso gave him the guns, it was okay for him to have the guns relative to this entire proceeding is not an accurate statement of the law. And I want you to accept that. And defense counsel has agreed to move on, but that is not a correct statement of the law. And I'd have you have that in mind as you consider what's been set up to this point. So the court is clearly talking about guns. Well, yeah, you just drew this distinction between guns and ammo. Would it be unreasonable to say, well, if I thought it was legal for me to get the gun back, then a fortiori, I clearly would have thought it was reasonable to have the ammunition back. Now, I know none of that was explicitly said in that words. What I'm worried about is if that potential argument got cut short by the rulings. Well, at that point, defense counsel didn't try to clarify what he was arguing in that regard. And there could be. And I recognize that that's a legitimate concern on behalf of the government. I'm not minimizing that. But apart from that, I'm trying to address this other matter of of what the ruling really was and whether it was really defensible in the context of whether it was relevant evidence on men's rail. Right. And and our position is that it was the defendant's testimony about his men's rail was admitted without objection. It was but it related solely to his willfulness with regard to the purchase of the ammunition. And the court's instruction did not relate to that it related to the lawful possession of the guns in a direct response to the defendant, arguing that he trusted the police when they gave him back the gun and that. So, is your argument that that this argument that the men's rail, the relevance to men's rail was simply not presented to the district court as a, as a justification to get this additional evidence in and therefore it was not preserved in the, in the context of a supportive men's rail lack of Israel. In the context of men's rail with regard to the length of the rifle. Yes, because he did not the defendant did not testify to that. When you say that I'm not sure I understand what you mean. Are you saying that the defendant didn't testify that El Paso giving him the firearm back meant that the barrel was indeed more than 16 inches. Right. And did he try to testify about that and was denied or did he just not do it I mean, do we just have a case where he didn't preserve the issue because he didn't tender that particular question I mean is that the end of the matter as far as you're concerned. Right, he just didn't do it. It's not like he tried to testify to it and was, and was cut off. He simply didn't testify about any impact, the return of the AR 15 had on his knowledge of the length of the barrel. And so it wasn't. Okay, that's now I understand your argument that it simply was not presented below that it certainly is being asserted on appeal but it wasn't preserved below and therefore, this is not something that we could reverse on. Right. There's a lot of evidence here, and we haven't even talked about Mr cop cop with a K, who said that the defendant had told him that it was short barrel, but no harmlessness argument. Well, our argument is that our argument is the district court simply didn't do what the defendant is claiming it did, it did not instruct the jury to disregard his argument. It simply told the jury to consider what it had heard in light of a correct statement of the law. That's very useful. And so there's a lack of a lack of a harmlessness argument and oversight, or do you concede that it wasn't. Well, we argue, we do argue harmlessness with regard to the first issue that was raised the, the Second Amendment, and it, and it basically covers all of the evidence that the, the strong evidence of provinos knowing possession of a short barrel rifle at pages 41 and 42 of the government's that's in relation to issue one not issue two but the same argument would hold true for harmlessness here. If the court found that there was air. Our argument is, and we do argue in our brief, what the defendant was allowed to argue because again, under under button. The question is whether the defendant was able to present his defense and that's what the defense is arguing here that they were not able to present their defense and so we do argue all of the things that he was able to argue in his closing, which is that he didn't know the length of the barrel because the government was confused about it and he goes into the officers testimonies about the different lengths of the barrel. He was a don't argue, who cares about the El Paso police because look at all this other evidence the jury would have convicted him 99.9 out of 100. Why not. So that that separate issue then. Again, the harmlessness argument is contained in the brief as to issue one and we would argue the court can consider that as to as to issue two, because it is fully briefed in regard to the strength of the evidence of his guilt of that count. And so again, ultimately the question being whether the district court improperly limited the defense's ability to present a defense it did not. The defendant was able to argue that he didn't knowingly possess a short barrel rifle, and he was able to argue that he did not willfully purchase the ammunition. And so there was no error in this case. We would ask that the court affirm, unless the court has any additional questions. Thank you, counsel. And you have some rebuttal time. Thank you, Your Honor. First, I'm extremely confused about the conversation judgy bell that you had with the government about preservation and mens rea. My understanding of the government's argument in its brief is that Mr Truvino did not explicitly testify that he relied on the slip of paper, and therefore it was irrelevant to his mens rea. The government never argued that he saw that the district court didn't understand its mens rea defense didn't understand that he was trying to raise a mens rea defense or anything like that. And if you look at the objection, the district court absolutely understood that everything that had been talked about previously was part of the conversation on page 848 he says that's public authority. We had this discussion, time and again. So it is very clear that everybody knew what the conversation was about that Mr Truvino absolutely preserved his arguments about mens rea. When it comes to whether you can infer that when someone saw a piece of paper it impacted their state of mind. 100% you can, the government makes inferences like that all of the time, there's case law about the government does not have to have a defendant's testimony to be able to prove what was inside the defendant's head, and neither does the defense need the defendant's testimony to prove, or to undermine the evidence of what was inside his head. I'm also extremely surprised that the government is saying that has made a harmless argument. I don't believe that you can make an argument about, you know, saying well even if one statute is unconstitutional that's okay. And that somehow that can transfer and become a harmless error argument on a completely different plane, where the government doesn't even argue that harmless error applies, doesn't say also see our harmless error argument above, and where we have two really big problems on harm. One that we, his argument was cut off so we don't know what else he would say, and it's the government's burden to prove harmlessness, and to the government went to the jury, and either either perfectly defined what the district court said, or exacerbated the harm of the district courts error by saying the judge told you that everything having to do with El Paso is irrelevant. This is 100% prejudice Mr Truvino and we asked the court to reverse. But thank you counsel for your arguments, the cases submitted counselor excuse.